# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| YOLANDA FLORES NIEMANN | § § | |
| v. | § § | Civil Action No. 4:17-CV-00206 |
| | § | Judge Mazzant |
| UNIVERSITY OF NORTH TEXAS | § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant University of North Texas's Motion for Summary Judgment (Dkt. #14). Having reviewed the motion and relevant pleadings, the Court finds the motion should be granted.

## BACKGROUND

In 2012, Plaintiff Dr. Yolanda Flores Niemann was hired by Defendant University of North Texas ("UNT") to be the Senior Vice Provost. Plaintiff had previously served on the Utah State University faculty and prior to that taught psychology at the University of Houston and Washington State University. At this time, Dr. Lane Rawlins was UNT's President, and Dr. Warren Burggren was UNT's Provost.

At UNT, Dr. Niemann received a $198,000 salary for the 12-month full-time administrative position. Plaintiff claims that during her hiring, Dr. Burggren told her that his interpretation of UNT policy and practice was that if Plaintiff was returned to faculty status from her administrator role, she would receive no less than 75% of her administrator salary. Plaintiff's June 18, 2012 written agreement instead stated that when she "would leave administration and return to the faculty, [her] salary as professor would be reduced to a nine-month basis and set an appropriate level for full professors in the Psychology Department in accordance with [UNT policy]." (Dkt. #14, Exhibit 45). The referenced UNT policy stated that the salary of an administrator

returning to faculty would be "prorated generally at nine times his or her then monthly salary earned while an administrator," but that the President "will determine the specific salary and may take into consideration all relevant factors." (Dkt. #14, Exhibit 44).

In 2014, Dr. Neal Smatresk replaced Dr. Rawlins as UNT's president. In January 2015, President Smatresk asked Dr. Burggren to step down from Provost (a 12-month position) and return to full-time faculty (a nine-month position) in the Department of Biological Sciences. President Smatresk negotiated with Dr. Burggren his "fallback" salary for returning to faculty status. President Smatresk set his fallback salary at $211,500, which was less than 75% of his Provost salary of $314,650.

Shortly afterwards, President Smatresk also asked Plaintiff to step down from her Senior Vice Provost 12-month position and return to a full-time faculty nine-month position in the Psychology Department. During the negotiation of her faculty salary, Plaintiff asserted that Dr. Burggren told her she would receive 75% of her Senior Vice Provost salary as a fallback salary (which would be approximately $154,000). The negotiations with Plaintiff resulted in a fallback salary of $140,000

Sometime later in Fall 2015, Plaintiff learned of the fallback salaries for the former Deans after they returned to full-time faculty status. She believed that the three former Deans—(1) Dr. Gloria Cox, (2) Dr. Susan Eve, and (3) Dr. Art Goven all had fallback salaries that followed a practice of being 75% of the administrator salary.

On March 24, 2017, Plaintiff filed suit against UNT alleging that UNT racially discriminated against her in violation of Title VII because her fallback salary was less than 75% of her previous salary in contrast to her non-Hispanic co-workers (Dkt. #1). On June 2, 2017, Defendant filed a partial motion to dismiss (Dkt. #4). No response was filed. On July 10, 2017,

the Court gave Plaintiff the opportunity to file a response to the motion. The Court noted that "[i[f no response is filed by that date, the Court will assume Plaintiff has no opposition to the Court's granting Defendant's motion."  (Dkt. #6).  No Response was filed. Accepting the facts in the motion as not controverted, the Court found that Plaintiff has no plausible claims against Defendant except for the Title VII claim and granted the motion (Dkt. #9).

On December 15, 2017, Defendant filed a motion for summary judgment for the remaining Title VII claim (Dkt. #14).  Again, no response was filed. Local Rule CV-7(d) provides as follows:

> **Response and Briefing.** The response and any briefing shall be contained in one document. A party opposing a motion shall file the response, any briefing and supporting documents within the time period prescribed by Subsection (e) of this rule. A response shall be accompanied by a proposed order conforming to the requirements of Subsection (a) of this rule. Briefing shall contain a concise statement of the reasons in opposition to the motion and a citation of authorities upon which the party relies. A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion.

Local Rule CV-7(d).  Since no response was filed, the Court will assume that Plaintiff does not controvert the facts set out in the motion.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment.  *Casey Enters., Inc. v. Am. Hardware*

3

*Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor . . . unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Comput. Corp.*, 98 Fed.Appx. 335, 338 (5th Cir. 2004). Rather, the Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all of the evidence, but must refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

**ANALYSIS**

Plaintiff alleges that the Defendant unlawfully discriminated against her on the basis of her race, in violation of Title VII. Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Defendant claims that Plaintiff cannot prove a prima facie case of race discrimination because she cannot point to any similarly situated non-Hispanic comparator that was treated better. Defendants further argue that Plaintiff's Title VII is time-barred.

Since the record contains no direct evidence of race discrimination,[1] the Court applies the three-step burden-shifting framework utilized by the Supreme Court in *McDonnell Douglas Corporation v. Green,* to analyze Plaintiff's claims of race discrimination in employment. 411 U.S. 792, 93 (1973); *see St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, (1993); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53 (1981).

In order to establish a prima facie claim of racial discrimination under Title VII, a plaintiff must show she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) . . . was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport,* 492 F.3d 551, 556 (5th Cir. 2007). If a plaintiff makes a prima facie showing of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Id.* at 557. The plaintiff then "bears the ultimate burden

---

[1] "Direct evidence" in the employment discrimination context is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1217 (5th Cir. 1995) (citing *Brown v. East Mississippi Electric Power Association,* 989 F.2d 858, 861 (5th Cir. 1993)).

of proving that the employer's proffered reason . . . is a pretext . . . ." *Id.* When the analysis has proceeded to this third step, the plaintiff—to avoid summary judgment—must produce evidence from which a reasonable factfinder could find "that the employer's reasons were not the true reason for the employment decision *and* that unlawful discrimination was." *Bodenheimer v. PPG Industries, Inc.,* 5 F.3d 955, 957 (5th Cir. 1993) (emphasis in original).

In the present case, Defendants argue that Plaintiff's race discrimination claims cannot survive summary judgment because Plaintiff can point to no comparator—a similarly situated, non-Hispanic employee who received 75% of her administrator salary as a fallback salary when they returned to faculty status. "Similarly situated employees are employees who are treated more favorably in nearly identical circumstances; the Fifth Circuit defines similarly situated narrowly." *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 856-57 (S.D. Tex. 2010) (internal citations and quotations omitted). The Fifth Circuit has described "similarly situated" employees as follows:

> The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer," the employees are not similarly situated for the purposes of employment discrimination analysis.

*Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009); *see also Perez v. Texas Dep't of Criminal Justice, Inst'l Div.*, 395 F.3d 206, 213 (5th Cir. 2004) ("We . . . have explained consistently that for employees to be similarly situated those employees' circumstances, including their misconduct, must have been 'nearly identical.'").

Plaintiff alleges in her Complaint that "three other individuals who were removed from their administrative roles—all of whom are white/[C]aucasian—did, in fact, receive 75% of their

6

administrative salaries when returned to faculty as is the custom at UNT." (Dkt. #1 at p. 5). These individuals are three former Deans—(1) Dr. Gloria Cox, (2) Dr. Susan Eve, and (3) Dr. Art Goven. (Dkt. #14 at p. 10). The following chart depicts the relevant salary information:

|  | **2015 Salary** | **"Fallback" Salary** | **% of Former Salary** |
|---|---|---|---|
| **Niemann** | $203,370 | $139,999 | 69% |
| **Cox** | $142,047 | $100,310 | 71% |
| **Eve** | $130,860 | $109,264 | 84% |
| **Goven** | $221,127 | $213,150 | 96% |

(Dkt. #14, Exhibit 6).

Defendant argues that all three professors are invalid comparators because they were Deans (or an Associate Dean(s)), who were not returning as faculty in the Psychology Department, and their fallback salaries were negotiated by the Provost, Dr. Burggren, not President Smatresk. In contrast, Dr. Niemann was a Senior Vice Provost returning to the Psychology Department and Dr. Burggren was no longer Provost when she negotiated her fallback salary with President Smatresk. Furthermore, the EEOC concluded that because "the decision to give ¾ of salary was determined by two different people; therefore race was not a factor." (Dkt. #14, Exhibit 52).

The Court is persuaded that Dr. Cox, Dr. Eve, and Dr. Goven were not similarly situated to Dr. Niemann. "It is generally accepted that professors who work in different academic departments are not similarly situated employees for Title VII purposes." *Chatha. v. Prairie View A&M Univ.*, No. 4:14-CV-3234, 2016 WL 4543887, at *8 (S.D. Tex. Aug. 10, 2016), *report and recommendation adopted sub nom. Chatha v. Prairie View A&M Univ.*, No. 4:14-CV-3234, 2016 WL 4557504 (S.D. Tex. Aug. 31, 2016) (citing *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 895 (5th Cir. 2012), *as revised* (June 22, 2012)). "Courts have acknowledged that working in different academic disciplines within a university typically requires distinctive skills, and so any comparison under Title VII is inappropriate." *Id*. *See Lee,* 574 F.3d at 259 ("Employees

7

with different supervisors, who work for different divisions of a company . . . generally will not be deemed similarly situated.") (citing *Wyvill v. United Cos. Life Ins. Co.,* 212 F.3d 296, 302 (5th Cir.2000)). Accordingly, the Court finds that Plaintiff has failed provide evidence of a valid comparator to survive summary judgment.

Even if it is assumed that Plaintiff has presented a *prima facie* case, her claims would fail for want of evidence from which a reasonable jury could conclude that the legitimate reasons offered by the Defendant was pretext for race discrimination. (See Dkt. #14 at p. 5–6). Because she will bear the burden of proof on these elements of her claim at trial, this lack of evidence is fatal. *See Celotex,* 477 U.S. at 322–23. Accordingly, the Defendant's motion for summary judgment on Plaintiff's race discrimination claims is granted.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. #14) is hereby **GRANTED**.

**IT IS SO ORDERED**.

SIGNED this 29th day of January, 2018.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE